Good morning. May it please the court. My name is Timothy Ivey from the Federal Defender's Court of Ohio. I'm here on behalf of the appellant, Victor Stitt. I would request three minutes for rebuttal if my time. Fine. Thank you. Your Honors, I have three primary arguments I'd like to advance to the court today, an oral argument. One, where I'm asking the court to issue an order vacating the denial of Mr. Stitt's motion to suppress, and in so doing, recognize that the home, and particularly taking into account the rural nature of this property, deemed this protected curtilage that was entitled to Fourth Amendment protection, and that Officer Nettles, or Law Enforcement Officer Nettles, when he ventured into that area violated his Fourth Amendment rights, Mr. Stitt's. Secondly, I would ask the court to vacate Mr. Stitt's conviction, recognizing that the trial court's failure to instruct the jury on the issue of venue, which was hotly contested in the lower court by way of a motion to dismiss by defendant in a hearing, and in a statement by the court that venue would be submitted to the jury as a trier of fact. And for which, as I read it, Mr. Ivey, there was no objection. There was no objection rendered. No request by your client that the court so instruct. That is very correct, Your Honor. So what do we typically do with that sort of thing? Well, I believe you can still review it under plain error standard if. Oh, that's what you would acknowledge. It gets plain error. Yes, I do. So it somehow affected your client's substantial rights? Absolutely. Even though he possessed the gun in both venues? Well, the issue of whether he had the particular gun that he was charged with in both venues is subject of debate and controversy in the case. Mr. Stitt... I thought that that was a no-brainer. But if it is, we'll hear from your opponent. I'm sorry to send you down that road. If it is controversial, you probably want to finish that. Yes, it is controversial, Your Honor, because the venue issue is an essential element for the trier of fact to determine. And when that was not presented to the trier of fact for consideration in the jury instruction and reflected in the verdict form, then therefore there was never an assessment made of the facts by a trier of fact to determine whether, in fact, he did possess the gun in question when he was in Coffey County before he ventured into Cannon County. Did the district judge find that it was the same gun in both counties? Did the district judge make a comment? I know your point is that it's a jury determination, but I was wondering if the district judge made any finding or statement. The district judge initially made a finding that it was on the venue issue, but then later upon reconsideration withdrew that and indicated that that would be presented to the jury at the conclusion of the evidence in the case, which it never was. So although there was the victim in the particular case, the alleged victim claimed that she was threatened with the gun, the other witnesses involved did not see Mr. Stitt with a gun in Coffey County. So the only gun that was recovered was the one in Cannon County. And so therefore, even though she made that allegation and one may look at that as my opponent did and say, well, that's evidence that he had it in the other county, the trier of fact never made that assessment because it was never presented. And so therefore, we're asking the court to remand back. On the final argument that I would like to make to the court's consideration is I find myself on the issue of whether or not Mr. Qualifiers to be deemed an armed career criminal under the Armed Career Criminal Act. More specifically, his aggravated burglary convictions. I think the government conceded in their brief the other convictions, facilitation of aggravated burglary and the other offenses, would not in light of Johnson because the only way to have them qualify would be on the residual clause, which the Supreme Court has deemed to be unconstitutional. I find myself in the unenviable position of having this court issue the pretty decision post-briefing, which settles the issue we acknowledge. But however, we would ask the court to reexamine the issue and more particularly to consider the concurring... I understand, Mr. Ivey, that must be done en banc. This panel needs to follow. Right. You understand? Okay. But you think that we should recommend that there be an en banc on the issue of whether the Tennessee aggravated burglary statute is a generic burglary statute. I do, Your Honor, yes. More particularly, I would direct the court to the concurring opinion of Judge White from this court, who indicated that in her opinion, in light of precedent of DeCamps and others, that the statute sweeps broadly over generic burglary, particularly in the definition of habitation. And because it sweeps broadly, that therefore it does not fit categorically a generic burglary. And particularly, I would direct the court to another prior decision in this court in interpreting Ohio's third degree burglary statute in the Coleman case. In the Coleman case, just like the statute had occupied structure, just like habitation here, to mean more than the generic definition of a structure or a dwelling. It included automobiles, vehicles, tents, and things of this nature. Similarly, and this court found that it swept broadly and did not fit a predicate qualifier for armed career criminal. In that case, this court did find it was, in the Ohio statute, was still nevertheless qualified, but this court utilized the residual clause prior to the Supreme Court's decision in Johnson. So now taking that rationale and applying it to the Tennessee statute, we have the same thing. No matter which subdivision of the Tennessee statute that this court can look to, you'd still, all of them cover, it must be done with the habitation. That's an overall encompassing definition. And just like the Ohio statute, Tennessee's habitation provision defines it in the same way. More than just a building or structure, but vehicles, tents, and things of this nature. So we would ask the court to apply the analysis as urged in the concurring opinion of Priddy to reexamine this issue to the Tennessee statute and find that it sweeps more broadly than the generic burglary. If I'm incorrect, please tell me, but my reading of the sequence of the arguments raised on behalf of Mr. Stitt is that the habitation argument was raised for the first time in the reply brief. And if I'm correct about that, I'm concerned about the government not having an opportunity to make at least a written response, certainly capable of speaking to it today. And I just wonder what you can say about the sequence, if I'm correct or not, and whether or not the arguments made and the failure to write about it earlier places the appellant at an unfair advantage. I don't think it places the appellant at an unfair advantage because of the sequence. Does that mean I have the sequence correct? I believe you do, but the sequence came about because of the 28J letter that the government wrote when the Priddy decision came out that we were not aware of at the time. My colleague was not aware of it at the time the brief was filed. So we do not argue against the opportunity for either side to have more time to brief this issue now that this has come out, the 28J letter I believe came out last week. But, I mean, Nance was already the law. Priddy reaffirmed the existing law from Nance. Yes, but Nance, as the concurring opinion points out, did not discuss the habitation section of the Tennessee statute, which the concurring opinion felt was vital to this analysis. Also, we have cited in our brief that since the Nance decision, the Tennessee Supreme Court has found that the Tennessee statute sweeps more broadly than the generic burglary. Back to my... So would that be a reason then for not following Nance, but the problem is Priddy because Priddy came out subsequent to the Tennessee Supreme Court's case? Yes, Your Honor. In this case, Priddy is our nemesis. It alerted you to what Judge White alerts counsel for the parties to this, which is what existed anyway but was overlooked in Nance. That is correct. But it was available to you. I mean, it's Judge White's concurrence that tips you. Sure. Oops, somebody. Yeah. Judge White saw what none of us saw, and we give her credit for that because she raised it, and it did. However, after further examining that, we then realized that that argument had previously been put before this Court in Coleman. What is this Coleman case? Could you give me the cite to that? I can. If you could spell Coleman. Yeah, because there are a lot of Colemans. It's 655 Fed Third 480, and it's from this court in 2011. Typical spelling. Pardon me? C-O-L-E. C-O-L-E, yes, M-A-N. So, again, we would ask the Court back on our first point to find that this is curtilage that was violated. Fourth Amendment protections were violated. This home was in a rural, and we're asking the Court to take the consideration this home was in a rural. It was a trailer home in a rural area. It sat 100 feet from the public thoroughfare, and the subject area in question was in the rear of the home, and the backyard was this court's. So the driveway, the gravel road, approached the back of the house? Because I'm picturing it the opposite, the more typical. It's leading to the front entrance to the home trailer. You say it came into the back of the trailer. That's where Officer Nettles was. I understand it as a turnaround, that you drive down the driveway and there's a turnaround of sorts, and that is where the officers were parked. Yes, Your Honor, that is true. However, it was no necessity to go that far deep because Mr. Stitt was not in that area when the officers came in. They went past the front door, and I believe Officer Nettles stated in the record that his intention was to do a knock and announce at the front door, which was clearly available, but he continued to the back, and since he didn't see Mr. Stitt. On the driveway. On the driveway, that is correct. I see my time has expired. You can continue to answer the question if you have a comment. Take into account that this area was enclosed by a wire fence. A fence is a statement. The driveway, or what area was enclosed? The whole property is around, and there's a fence area. Well, if it's a wide-open rural area, I want to know which of those features I should focus upon. It's a rural area, you're telling us, so in favor of Fourth Amendment treatment, yet there's a fence that, how narrow is the property? I am not aware of the exact dimensions of it, but I think. Like it's an acre? I would say approximately from looking at it. I'm picturing a large parcel. But the area in question is not visible from the street, and a gate in the fencing is up in the front. There is a street. It's a state. There's a road in the rural area. The property, the trailer home, is 100 yards or so beyond that in the front. So you have to travel some distance to get all the way to the turnaround area or the back area of it. Our point is simply that by erecting this fence, no matter what it's like, that is a statement of privacy and to keep out. And so to say that we don't want you in the front but it's okay to come around the back defies logic. So we're asking the court to find that protected curtilage. Thank you. Thank you. Good morning. Good morning. I'm Tara Bay. I'm an assistant United States attorney from the Chattanooga Division of the Eastern District of Tennessee. And if I may, I think I can draw a clearer picture of the defendant's mother's house and where these events occurred. It is a rural road. It is farmland. Are there pictures, photographs somewhere in this record? Page ID 217 is a picture. Yes, there were. That just shows that turnaround. Well, I think that there were a total of eight pictures introduced by the government and five by the defendant at the suppression motion. And they were all admitted into the record. But if you're standing on the road, there is a driveway. There are fenced-off areas on either side of the driveway. The fenced-off area goes down the length of the driveway and across the front of the house. And then on the other side, it goes down and then goes around the barn to the back of the property. And it was meant to keep the animals. Ms. Vaughn had horses. It was meant to keep them off of the driveway and away from the house. So the officers did not have to go through a fence to get to the driveway. And as you pull up the driveway, it is about 100 yards from the road. As you pull up the driveway, you can pull straight up to the right of the home where there's a gravel area, and that's where Mr. Nettles parked. Or you can curve around to the front of the home that goes to the front door. And that is where Ms. Vaughn testifies that she parks. And so when she called it a turnaround, what she meant by that is that she parks in the front and then she backs up into this other part of the driveway and to drive out face-first rather than backing out the whole driveway. So it's not really a turnaround as you would think, like a circle. But in any event, we're looking at the suppression issue. It's a question of whether there is clear error on the factual determination. And there was plenty of testimony in the record that would support that this was not curtilage under the law in that it was not private from the road. It was not closely connected to this driveway. It was not closely connected to the house. And there was Mr. Nettles, Ms. Vaughn, and Mr. Gordy all testified that there was nothing to demark the end of the driveway. And defense counsel argues that, well, then you're not allowing the poor the same privacy rights as the rich, but you don't need to put any money into it, but there needs to be some demarcation. And even large stones the defendant could have taken from his fields at no cost to himself and set those up, that would be a demarcation of the end of the driveway. But there aren't those, and that's clear because both the defendant's family friend and himself, they both drove right past that driveway and around to the back of the house, which is where their cars were, a truck and a car, when Officer Nettles pulled into the end of the driveway. And both Officer Nettles and Agent Gordy testified that they were parked in about the same place and they stepped out onto gravel. So it's certainly not plainly or clearly error to define that this was not part of the cartilage. It was not intended to have the privacy protections of the Fourth Amendment. Regarding venue, the defendant did not request a jury instruction. The defendant did not discuss venue at the pretrial hearing. The last time the defendant discussed venue at all was, I think, September of 2013, and our trial was in April, I believe, of 2014. But it was several months, at least six months, between when the defendant last asked for venue and then in the trial. And, in fact, Ms. Corey was the defendant's attorney at that time. After that, he had Mr. Cameron and then Mr. Little at trial. So he was not the same attorney that had asked the court to make a venue determination. So, you know, when the defendant does not request a jury instruction, does not object to the jury instructions as they are given, then I believe it constitutes a waiver of that right, but certainly even a forfeiture where the court's looking at plain error. Then there was evidence from Ms. Hostetler at the trial where she testified that the defendant got a gun, put it in her mouth, and that she knew that gun, she had seen it a month before, a couple weeks before, had a broken spring. She looked at the gun that the officers had recovered in Cannon County and said, that is the same gun. And she says this in front of the jury? She said this in front of the jury. And so when you're considering, it's really a sufficiency of the evidence on the venue issue, the credibility of the witness goes to support the jury's verdict. So the jury did have sufficient evidence to find venue even if the defendant had raised it. So it's not plain error that the court did not sui sponte offer this jury instruction to the defendant when there was. So is it an element of the crime? It is not an element of the crime, but it is essential to the government's case to show that the crime occurred in the same venue as where the trial is being held. But if a crime occurs in two different districts, then either district is the proper place for that trial to be had. Do you have a case that you would rely on to say that we can say that because there was evidence that was sufficient for a jury to find that the venue was proper, that we do not have plain error here? Yes, Your Honor. United States v. Cooper, and I did not bring, it's cited in our brief. I did not bring the case citation, but I have it. In your brief, that's fine, thanks. But yes, United States v. Cooper, the defendant failed to object to the jury charge. The court decided it was plain error and that the venue was proven by preponderance of the evidence, which is all that's necessary for venue because it's not an element, and that the government had established venue through the testimony of the witnesses. Then regarding the defendant's arguments to the sentencing enhancement, first of all, this court has two panel decisions, one very recently in Priddy and, of course, Nance in 2007, that have said both categorically Tennessee aggravated burglary is a generic burglary and therefore a violent felony. Aren't they both wrong? Well, I don't think that they're both wrong. Nance was very, was oversimplified, I believe, in its opinion, because Nance really only looked at one manner of committing the burglary, that being entering with intent to commit a theft, and did not discuss the various types of habitation that could be burglar. Right. So if you look at the different kinds of habitation, you realize that it is not generic burglary, the Tennessee aggravated burglary statute, correct? So there are different, the motor vehicle, I don't believe, would fit under the definition of a building or a structure that's required by Taylor. So there are different types of habitation that I don't believe would fit into the generic definition of burglary. So aren't Priddy and Nance wrong? They're not wrong because they don't address either one. Even Priddy goes through the three different manners of committing the offense, but Priddy does not discuss at all the different types of habitation. So I don't believe that they're wrong in that they haven't addressed the issue of whether different types of habitation could be outside the generic definition of habitation. I feel like we're talking completely past each other. Is the Tennessee aggravated burglary statute a generic burglary statute? I believe that it can be committed in a way that does not meet the Taylor definition for... So it is not properly called a generic burglary statute then? Not when you consider all the various different habitations. Which you're supposed to consider. So my basic problem then is this man has gotten a huge sentence  that if you're just looking at the simple holding that the Tennessee aggravated burglary statute is a generic burglary statute. Nance was wrong and Priddy reaffirms Nance, even though there's Judge White's separate opinion. And so isn't this grossly unfair vis-a-vis this particular man that his sentence is huge? Was it 290 months? I can't remember if I've got the right case for that. Yes, it was. Or 210 months I think is what it was. In any event, he got a huge sentence. It was a total of 290 months. As an armed career criminal, based on what you have properly conceded was an incorrect Sixth Circuit decision that was reaffirmed just recently. But then what I think you need to look at is whether this panel can even look at whether there was sufficient proof that the habitation was one that fits into the generic burglary. Because the defendant did not argue that at sentencing. He argued only that the burglaries, it wasn't clear from the documents, that the burglaries occurred on separate occasions. And that's what the district court judge decided. He didn't argue that there were different types of habitation, even though at the time of the sentencing, Descamps had already been, Descamps was 2013, and Descamps talks about the modified categorical approach and looking at Shepard documents if the crime is divisible. And Mitchell was decided in February of 2014, and he had also discussed the Tennessee robbery as an armed career criminal and whether the statute was divisible. So the defendant did not argue that at sentencing, and he did not argue that in his initial brief either. I understand, and you're making a perfectly true point, that the defendant didn't make these arguments. Frankly, this is a very confusing area of the law, as we see with the Supreme Court and Johnson finally throwing up its hands and saying that they're going to get rid of the residual clause on constitutional vagueness grounds. But the question really, in my mind, is what is the proper thing to do now that we know that the Tennessee aggravated burglary statute, and I'm saying we, speaking for myself, now that I know that the Tennessee aggravated burglary statute should not be called a generic burglary statute, and you've agreed, which I give you credit for doing, what should we do? And your response could be, well, he should be an armed career criminal anyway because of 1, 2, and 3. So in his case, it doesn't really matter that the theory is wrong because there's another theory or another application that works. So I would appreciate if you have such a theory, but I honestly don't know whether the smarter thing to do. Obviously, we're bound by published Sixth Circuit cases, so we have to say, Nance, pretty, we recommend en banc rehearing. But then the question is, should this case be remanded to the district court for consideration of whether there's any ACCA basis? Well, as you both have knowledge, a recommendation for an en banc hearing is the only way to reconsider the statute. And I would say that this is not the case for that, in that because the defendant did not make these arguments, it's a plain error review, and the defendant also did not object to the PSR, which described the habitations as homes and buildings. And this is the, sadly, I mean, we have, Mr. Sitt had six. You only need three. And they're described in the PSR, I mean, that they are homes. Right, right. But we have cases that say that the PSR is not a basis for, it's not a Shepard document. But even at the sentencing, the defense counsel and the court both called these structures or these locations homes and buildings. And so when the defendant has agreed with the court that these are homes and buildings, then it can't be plain error for the court to rely on that. So Shepard, it's an interesting intellectual question, and Shepard documents can be expanded by consent of the defendant, attorney, obviously. I would say that, and I'm trying to remember which case it is, but I would say that when, oh, pretty, pretty, the defendant had agreed with the court at the sentencing, and I can't remember what that agreement was, and then he failed to object to it, and so pretty said, that's a waiver. When you have agreed to these facts, then you can't later object to the court using those facts. So I don't think that you expand the Shepard document so much as... It's a waiver, not a forfeiture, because it's an affirmative. Right, that's correct. The other thing I... I interrupted your thought. No, that's fine. Entirely my fault. No, no, no, that's fine. So I would argue that this is not the case to reconsider the Tennessee aggravated burglary, although I do see the Sixth Circuit likely getting an en banc panel to reconsider that. But because of the facts in this particular case, because the defendant agreed at the sentencing hearing, because the defendant did not object to that and did not put it in his initial brief, then it's not before this panel to consider whether there was sufficient evidence, sufficient Shepard documents to establish that issue. Thank you. Thank you. Thank you. So what about this idea that your prior counsel for your client consented essentially that his aggravated burglaries were burglaries of homes? I'm not familiar with any precedent that allows that fact to expand the Shepard documents. The individuals who face potential Armed Career Criminal Act designation are in and of themselves not the most stellar of citizens. Otherwise, this wouldn't even come up as an issue. I think the real issue here is that the court has laid out and the precedent has laid out the procedure for determining under the enumerated offenses of the procedure that is to be followed. And that is that we see if the statute in question that defines the offense sweeps broadly over the generic understood meaning of the offense. And if it does do that, then it does not qualify beyond that point. When we use a modified categorical approach, the court has also limited what can be done or what can be looked at, and that is indictments. The indictment in this case did not give that type of information to allow us to do it, even if this court defines that. I think as the court has recognized that the fairest thing is that it is true it wasn't brought up before, but this is an involving area of the law of which many courts and many attorneys have not fully fleshed out these arguments. That is what I believe the concurring opinion in Priddy pointed out something that was not recognized even by the court, even when the court had applied similar analysis in the Coleman case to the Ohio statute for a third-degree burglary. So I think basically in fairness, this matter should be considered en bas and further briefing done. Thank you. Counsel, may I ask, recognizing the importance of procedural accurateness as well as substantive accurateness, you heard what your opposing colleague said, this isn't the case, and she used waiver or forfeiture, and you've spoken to that already. But why would you urge this panel to urge en bas that this is the case when it may very likely be that there was no ultimate harm, meaning the same or similar sentence will be imposed because there were six predicates, not just three? There really is no other basis because the other offenses upon which were originally considered for qualifying Mr. Stitt for armed career criminal were no longer available for consideration because the only way to fit them in was in the residual clause, which the Johnson court has deemed to be unconstitutional. So these aggravated burglaries, many of them were in the same indictment, although they were separate incidences. So I think that this is important. So for that reason, I'd ask the court to vacate the motion for summary judgment and grant it, vacate the conviction based upon the court's failure to instruct on the issue of venue, and consider a recommendation for en bas on the Armed Career Criminal Act designation. Thank you so much. Thank you both for your argument. The case will be submitted when the clerk calls the next case.